IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

J&J SPORTS PRODUCTIONS, INC.,

    Plaintiff,

v.

STEVE SANG RO,

    Defendant.
                        /

No. C 09-02860 WHA

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND DENYING REQUEST FOR ENHANCED DAMAGES**

## INTRODUCTION

In this action for damages resulting from the unlawful interception and intentional exhibition of a sporting program, plaintiff J&J Sports Productions, Inc. moves for default judgment against defendant Steve Sang Ro. For the following reasons, the motion for default judgment is **GRANTED.** Plaintiff's request for enhanced statutory damages is **DENIED.**

## STATEMENT

The facts alleged by plaintiff are as follows. Plaintiff, a distributor of sports and entertainment programming, purchased exhibition rights to broadcast the *"Lethal Combination": Manny Pacquiao v. David Diaz, WBC Lightweight Championship Program.* This program included the main fight between Manny Pacquiao and David Diaz as well as preliminary "undercard" bouts. In order to broadcast the program, commercial entities were required to enter into a sublicensing agreement with plaintiff. The interstate transmission of the program was encrypted and only made available to plaintiff's customers who had paid the licensing fees.

On June 28, 2008, investigator Gary Gravelyn observed the alleged unlawful exhibition of the program at the Union Jack Pub — owned at the time by defendant Steve Sang Ro. In his

affidavit, Gravelyn observed three television sets and gave handwritten descriptions of their size and location (Decl. 2). The names of the boxers that were observed in the affidavit, however, do not match the names of the boxers listed in plaintiff's complaint and application for default judgment. The program listed in the complaint and default motion is *"Lethal Combination": Manny Pacquiao vs. David Diaz, WBC Lightweight Championship Program*. While it is difficult to read the copy of the affidavit, the boxers listed appear to be Humberto Soto and Lorenzo-Lorenzo. Nowhere in the complaint nor the application of default judgment does plaintiff mention these names or make any attempt to show that these names are somehow related to the "Lethal Combination" program. The first mention of these names appears in plaintiff's affidavit sworn by the president of J&J Sports, filed six days after the application for default judgment. The document identifies Gravelyn's observation of Soto and Lorenzo as a "undercard bout fight" which was unlawfully exhibited (Decl. ¶ 7).

Investigator Gravelyn's affidavit did not expressly describe which television set was displaying the program, nor did it state how many sets were displaying the program. The amended memorandum for default judgment, however, states that "Defendant broadcasted *The Program* on one large screen television and two 27" televisions" (Br. 6). For purposes of this order, it will be presumed that the statement in the memorandum is correct and all three televisions were broadcasting the program. In his report, Gravelyn circled that a cable box "was not" visible and the establishment "has" a satellite dish. Union Jack Pub was recorded to have a 200-person capacity. There was no required cover charge. During the five minutes that Gravelyn spent at the establishment, he performed three headcounts. Each counted twelve patrons. Gravelyn then exited the scene and noted the license plates of six vehicles in the immediate vicinity.

On June 25, 2009, plaintiff filed suit against defendant Ro. Defendant has not responded to plaintiff's complaint. There have been several issues with plaintiff's service of process on Ro. On October 5, plaintiff filed an application for an order extending time to complete service. In this application, plaintiff requested an additional thirty days from the filing date for service. Plaintiff explained that a new address for defendant Steve Sang Ro had recently been identified.

On October 6, plaintiff's request for thirty additional days was granted. On October 8, plaintiff filed an application to continue the case management conference, set for October 15, for an additional thirty to forty-five days. In this application, plaintiff asserted that defendant is no longer the legal operator of Union Jack Pub, and plaintiff's attempts to serve at the last know home address had been unsuccessful. Plaintiff's request for a continuance was denied.

At the first case management conference, defendant failed to appear, because he had not been served. The deadline to file proof of service was extended to November 13. The new case management conference was set for December 3. Plaintiff, again, failed to file proof of service by the deadline. On November 16, plaintiff filed an application for service by publication. In the application, plaintiff stated that service had been unsuccessfully attempted at the last known addresses. Plaintiff's request for service by publication was denied.

On December 3, the day of the scheduled case management conference, plaintiff filed proof of service which stated that on December 2, two documents were left with "John Doe - Refused Name - Co-Occupant." Plaintiff failed to serve the case management order, as required by the order dated October 15. After defendant did not appear at the December 3 case management conference, yet another order was issued requiring plaintiff to effect service by December 31. The order set the new case management conference for January 14, 2010.

In accordance with the new deadline, plaintiff filed a new proof of service on December 17, 2009. Again, the proof of service stated that document was left with "John Doe - Refused Name - Co-Occupant." This second service was made on December 12. On January 14, 2010, the third case management conference was held and defendant did not appear.

On February 2, an order was issued requesting in part that counsel explain how the certificate of service shows that proper service was effected on defendant. In response, plaintiff filed additional briefing to explain why service was proper. At the hearing, counsel presented the "Declaration Regarding Diligence" (Dkt. No. 21) to prove that the address of service was proper. This document indicated that upon being served, "John Doe" had stated that defendant Ro was "not home." This order finds that service of process was adequate.

In its application for default judgment, plaintiff seeks a judgment granting the following relief: (1) $10,000 in statutory damages for violation of 47 U.S.C. 605; (2) $100,000 in enhanced damages for violation of 47 U.S.C. 605; and (3) $2,600 in damages for conversion under Cal. Civ. Code § 3336. Plaintiff's motion for default judgment also asserts that "the Court shall award attorneys' fees and costs" (Br. 4). These requests are considered below.

**ANALYSIS**

Under FRCP 55(b)(2), a party can apply to the court for entry of judgment by default. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether default judgment is appropriate, the following factors are considered:

> (1) [T]he possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### A. MERITS OF SUBSTANTIVE CLAIMS AND SUFFICIENCY OF THE COMPLAINT.

After the entry of default, all well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The merits of plaintiff's substantive claims and the sufficiency of the complaint are thus considered together.

#### (1) *Statutory Damages.*

"The Federal Communications Act, 47 U.S.C. sections 605 *et seq.*, prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming." *J&J Sports Productions, Inc. v. Guzman*, 2009 WL 1034218 (N.D.Cal. 2009) (citations omitted). Under Section 605(e)(3)(C)(i)(II), damages for each violation are set at a minimum of $1,000 and a maximum of $10,000.

The Cable and Television Consumer Protection Act, 47 U.S.C. 553, "prohibits a person from 'intercepting or receiving or assisting in intercepting or receiving any communications service offered over a cable system.'" *J&J Sports Productions, Inc., v. Manzano*, 2008 WL

1 4542962, *2 (N.D.Cal. 2009). Under Section 553(c)(3)(A), damages for each violation are
2 awarded at a minimum of $250 and maximum of $10,000.

3 Plaintiff may not recover under both 47 U.S.C. 605 and 47 U.S.C. 553. *Manzano* at *2.
4 "A signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he
5 intercepts a satellite broadcast. But he cannot violate both by a single act of interception." *Ibid.*
6 While the plaintiff's application for default judgment does allege that defendant violated 47
7 U.S.C. 553 (Br. 2), it does not include Section 553 in its itemized calculation of damages. Rather,
8 it requests statutory and enhanced damages under Section 605 alone.

9 Plaintiff's memorandum argues "Plaintiff should not be prejudiced because it cannot
10 isolate the precise means of signal transmission the Defendant used and respectfully submits its
11 prayer for recovery of damages . . . pursuant to Title 47 U.S.C. Section 605, as it is inherently
12 reasonable in this instance where the Defendant has placed itself in default for failing to answer
13 or otherwise respond" (Br. 3). Plaintiff offers no other explanation why the damages should be
14 analyzed under Section 605 — the statute with the higher minimum award and requirement for
15 attorneys fees and costs — instead of Section 553. The fact that the plaintiff's investigator did
16 not see a cable box and saw a satellite dish does not mean that there was not a device out of view
17 to receive cable transmissions. Without better homework by the investigator, the Court will not
18 rule out the presence of a cable box. Plaintiff argues that it "should not be prejudiced" because it
19 cannot determine the means of transmission, however, if plaintiff wanted to prove this, they could
20 have filed a third party subpoena or requested an order for inspection. The fact that defendant
21 defaulted does not rule out plaintiff's opportunity to take third-party discovery. Therefore, the
22 defendant's violation will be analyzed under Section 553.

23 Plaintiff's memorandum states that "[b]efore addressing cases that have awarded damages
24 under this section, it is important to note the specific facts of the case" (Br. 6). In the entire 17-
25 page memorandum, however, plaintiff spends barely 20 lines addressing the specific facts of the
26 alleged violation — the rest consists of boilerplate legal arguments cut and pasted from previous
27 filings. Without additional evidence supporting a more egregious violation, this order awards
28 $250 in statutory damages under Section 553.

5

(2) *Enhanced Damages.*

Plaintiff also requests enhanced damages of $100,000, the maximum amount under Section 605(e)(3)(C)(ii). The relevant provision under Section 553(c)(3)(B) allows for a maximum enhanced damage award of $50,000. The memorandum notes that enhanced damages are "needed to serve as a deterrent" (Br. 11). In plaintiff's application to continue the case management conference, plaintiff stated that defendant Ro was no longer the owner of Union Jack Pub. In such a case, the *Manzano* decision is instructive. The *Manzano* Court found that since Mr. Manzano was no longer the owner of the facility where the piracy occurred, "hefty statutory damages will not deter future violations . . ." *Manzano* at *3. In addition, the judgment awarded in this order is $1,750 more than defendant would have had to pay for a proper license. Considering the facts of this case, this is a significant penalty for a first-time violation that would likely promote general deterrence. Accordingly, plaintiff's request for enhanced statutory damages is **DENIED.**

(3) *Conversion.*

The Ninth Circuit has held that a claim for conversion in California has three elements: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Since plaintiff had purchased the licensing rights to the program at issue, these three elements are met. Union Jack Pub had a capacity of 200 people. According to the affidavit by J&J Sports' president, Joseph Gagliardi, the amount that defendant — a commercial establishment with a maximum occupancy of 200 — would have been required to pay for a proper sublicensing agreement was $2,600 (Decl. ¶ 8). Accordingly, this order awards $2,600 for the conversion claim.

(4) *Attorney's Fees and Costs.*

The declaration of plaintiff's counsel, Thomas P. Riley, includes an itemized calculation of the requested judgment. This document does not mention attorney's fees and costs. The notice of application for default judgment, however, states that "Plaintiff also seeks recovery of its attorney's fees and relevant costs incurred as provided for pursuant to 47 U.S.C. Section 605, *et*

6

*seq*" (Br. 3). Plaintiff's memorandum also asserts that "the Court shall award full costs, including reasonable attorney's fees" (Br. 4). As support for this assertion, plaintiff cites to 47 U.S.C. 605(e)(3)(C)(ii). As discussed above, this order declines to use Section 605 in its analysis, without more evidence as to the means used to intercept the broadcast. The relevant portion of Section 553 states that the Court *may* award attorneys fees and costs. 47 U.S.C. 553(c)(2)(C). The memorandum does not offer any dollar amount or additional support for why plaintiff's attorney's fees should be included. Like the Court in *Kingvision Pay-Per-View, LTD. v. Backmun*, 102 F.Supp.2d 1196, 1199 (N.D.Cal. 2000) (another default judgment brought by Attorney Riley), the undersigned "is wary of granting unreasonable fees for similar work done in . . . virtually identical cases where seemingly boiler-plate pleadings are utilized." *Ibid*.

This case has been replete of procedural snafues. The paperwork filed has not been directed at the facts of this case. Twice, plaintiff's counsel mistakenly cited to "this Court" in the original memorandum for default judgment. An order was issued, requiring that counsel be prepared to explain these citations. In response, Attorney Riley submitted an explanation and amended memorandum. In this response, Attorney Riley admitted that the original filing contained several misstatements and typographical errors. (Br. 2). He further admitted that the language citing to "this Court" actually "pertained to a different signal piracy case." (Br. 2). Attorney Riley attributed these errors to insufficient editing by administrative assistants and himself. (Br. 2). At the hearing, he again apologized for these errors.

In reviewing the amended memorandum, additional errors in the original filing have been revealed. Specifically, the plaintiff's original filing stated that the affidavit of Gravelyn notes "Defendant's broadcast the *Program* on one television and one flat screen television" (Br. 6). The affidavit actually contains a handwritten description of "1 large screen [and] 2-27" " (Decl. 2). In the amended memorandum, plaintiff changed the description to "one large screen television and two 27" televisions" (Br. 6). Considering Attorney Riley's explanation for the other errors, it can be presumed that the original description was yet another mistake which included facts from another piracy case.

7

Taking into account the sub-standard, in fact misleading nature of the filed paperwork — that Attorney Riley himself apologized for — this order awards $1,500 for attorney's fees and costs.

### B. REMAINDER OF THE *EITEL* FACTORS.

The remainder of the *Eitel* factors favor entering default judgment in favor of plaintiff. If this motion is not granted, plaintiff will be left without a remedy or a means to prevent defendant's continued delinquency. Defendant never answered or otherwise responded to the complaint, so it is unclear whether there would be any dispute over material facts. There is no evidence that defendant's failure to respond was the result of excusable neglect.

It is true that a large sum of money at stake would disfavor default judgment. *See Eitel*, 782 F.2d at 1472 (stating that three million dollar judgment at stake, considered in the light of the parties' dispute as to material facts, supported the court's decision not to enter default judgment). The declaration of Attorney Riley requests damages totaling $112,600. As discussed above, this order declines to award the requested amount. The combined award for attorney's fees, costs, statutory and conversion damages will be $4,350. This amount does not disfavor granting default judgment.

Finally, although federal policy does favor a decision on the merits, Rule 55(b) allows entry of default judgment in situations such as this, where the defendant has refused to litigate. On balance, the *Eitel* factors weigh in favor of granting default judgment.

## CONCLUSION

For the reasons stated above, plaintiff's motion for default judgment is **GRANTED**. Plaintiff's request for enhanced statutory damages is **DENIED.** Plaintiff will receive $250 in statutory damages, $2,600 in damages for conversion, and $1,500 in attorney's fees and costs.

**IT IS SO ORDERED.**

Dated: February 19, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8